**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NIDEC CORPORATION,

    Plaintiff,

v.

VICTOR COMPANY OF JAPAN, *et al.*,

    Defendants.

No. C-05-0686 SBA (EMC)

**ORDER GRANTING NONPARTY TEXAS PACIFIC GROUP, INC.'S MOTION TO QUASH; AND GRANTING DEFENDANTS' MOTION TO QUASH**

**(Docket Nos. 672, 677, 681, 693)**

    In connection with the above-referenced case, Plaintiff Nidec Corporation served, on May 2, 2007, a subpoena on a nonparty by the name of Texas Pacific Group, Inc. ("TPGI"). Currently pending before the Court are TPGI's motion to quash the subpoena, *see* Docket No. 677, and Defendants' motion to quash the subpoena. *See* Docket Nos. 672, 693. TPGI has also filed a motion to change time, which is now moot. *See* Docket No. 681.

    Having reviewed the parties and TPGI's briefs and accompanying submissions, and having considered the oral argument of counsel, the Court hereby **GRANTS** both motions to quash.

## I.   FACTUAL & PROCEDURAL BACKGROUND

    Nidec has filed suit against Defendants, asserting infringement of four patents related to spindle motor technology. Defendants in turn have filed a counterclaim for patent infringement. In or about the spring of 2007, JVC's largest shareholder, Matsushita Corporation, solicited bids from third parties to purchase Matsushita's shares (which constituted a majority interest in JVC). Nidec believed one of the third-party bidders to be TPGI, and subsequently served a subpoena on TPGI in May 2, 2007. *See* Young Decl. ¶ 3 & Ex. A (subpoena).

In response, both TPGI and Defendants moved to quash the subpoena that was served. According to TPGI, the subpoena should be quashed because TPGI is not the proper third party to be served -- *i.e.*, the third-party bidder for the majority interest in JVC was a Texas Pacific Group ("TPG") fund which is an entirely different legal entity from TPGI. Defendants contend that the subpoena should be quashed because it is untimely and, moreover, seeks production of privileged documents.

## II.   DISCUSSION

Defendants contend, as a preliminary matter, that the subpoena should be quashed because it is untimely: fact discovery closed on January 10, 2007, but Nidec did not serve the subpoena until almost four months later. Nidec, in turn, argues that the subpoena is not untimely because it is related to the issue of willfulness, and willfulness discovery did not close until May 31, 2007, *i.e.*, several weeks after the subpoena was served.

The Court finds that the subpoena was not targeted to willfulness discovery. The documents subpoenaed were very broad in scope, and can only be fairly characterized as general fact discovery. That being said, Nidec has demonstrated that it was not possible to serve the subpoena prior to the fact discovery cut-off because only recently did a TPG fund bid to purchase a majority interest in JVC. The proper question therefore is whether there is good cause to permit this belated discovery on a nonparty.

In determining whether the subpoena should be enforced, the Court is guided by not only Federal Rule of Civil Procedure 45(c)(3)(A)(iv) which protects subpoenaed parties from "undue burden" but also Rule 26, which provides, *inter alia*, that a court may limit discovery if "the discovery sought . . . is obtainable from some other source that is more convenient, less burdensome, or less expensive" or if "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C). Here, the vast majority of the discovery sought from TPGI is discovery obtainable from a source more direct, convenient, and less burdensome -- namely, from Defendants. Notably, at the hearing on the motions to quash, counsel for Nidec represented that the discovery at issue consisted of, in essence, documents provided by Defendants to third parties -- potential bidders for the shares of JVC stock --  regarding Defendants' assessment about the patents

2

at issue and the instant litigation. There is simply no reason to burden nonparties when the documents sought are in possession of the party defendant.

Nidec points out that there is at least one document that Defendants do not have in their possession, custody, or control -- *i.e.*, notes that a TPG fund attorney made during a meeting with a JVC representative (Tetsuro Fuse). But this document is likely to be of marginal value. It is unlikely that Mr. Fuse would have conveyed information substantially different from that conveyed in the documents provided to the TPG fund attorney. The burden on the third party (whether the proper third party is TPGI or another TPG entity) outweighs the likely benefit of the subpoena at least in the absence of a convincing showing that the subpoena is likely to yield unique and material evidence from the third party. Accordingly, the Court grants both TPGI and Defendants' motions to quash the subpoena.[1]

However, the Court does not bar Nidec from pursuing discovery specifically targeted to the issue of willfulness *from Defendants*, that is, so long as Nidec is seeking to enforce discovery that was timely served or can demonstrate good cause for seeking the discovery past the applicable cut-off date. Nidec and Defendants should immediately meet and confer to determine what discovery should be provided by Defendants.

To assist the parties in their meet and confer, the Court provides the following guidance on the issue of the application of privileges to documents provided to potential bidders. Under the attorney-client privilege, it is a general rule that attorney-client communications made "in the presence of, or shared with, third-parties destroys the confidentiality of the communications and the privilege protection that is dependent upon that confidentiality." 1 Paul R. Rice, Attorney-Client Privilege in the United States § 4:35, at 195 (1999 ed.). Similarly, as discussed below, the work-product privilege may be waived by disclosure to third parties which results in disclosure to an adversary party.

---

[1] As to TPGI's motion to quash on the ground that it is only a shell corporation and had no control over the TPG fund(s) actually involved in the JVC transaction and thus no custody, control or possession over the subpoenaed documents, the Court finds Nidec has failed to establish a *prima facie* case that TPGI was a properly named party in the subpoena. While the Court does not condone the "hide the ball" tactics of TPGI in refusing to identify the properly named TPG fund, the lack of a *prima facie* showing compels the Court to quash the subpoena issued to TPGI.

1   However, there is an exception to the waiver rule. Participants in a joint or common defense
2 or individuals with a community of interests

> may communicate among themselves and with the separate attorneys on matters of common legal interest, for the purpose of preparing a joint strategy, and the attorney-client privilege will protect those communications to the same extent as it would communications between each client and his own attorney.

*Id.* at 192. The joint defense and common interest doctrines are not privileges in and of themselves. Rather, they constitute exceptions to the rule on waiver where communications are disclosed to third parties. *See United States v. Bergonzi*, 216 F.R.D. 487, 495-96 (N.D. Cal. 2003) (discussing "the common interest exception to waiver of the attorney-client/work product privilege"). "The common interest privilege . . . applies where (1) the communication is made by separate parties in the course of a matter of common [legal] interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived." *Id.* at 495. Of course, since it is an anti-waiver exception, it comes into play only if the communication at issue is privileged in the first instance.

"The common interest doctrine has its origins in situations where one attorney acts for two clients." Edna Selan Epstein, Attorney-Client Privilege & Work-Product Doctrine 196 (4th ed. 2001). It has been applied beyond the joint client context to the joint defense context -- for instance, when the defendants are co-defendants in the same action or are defendants in separate actions sued by the same plaintiff. *See B.E. Meyers & Co., Inc. v. United States*, 41 Fed. Cl. 729, 733 (1998). "The theory of this joint defense/community of interest rule is that when an attorney agrees to serve his client's codefendant for a limited purpose, he becomes that codefendant['s] attorney for that purpose." Rice, Attorney-Client Privilege in the United States § 4:35, at 195. In order for the joint defense theory to apply, there need not be actual litigation. *See Union Carbide v. Dow Chemical*, 619 F. Supp. 1036, 1047 (D. Del. 1985) (noting that the common interest privilege may also apply where the parties are likely to be involved in "anticipated joint litigation"). Moreover, the joint defense theory can extend to "interested third parties who have a community of interests with respect to the subject matter of the communications." Rice, Attorney-Client Privilege in the United States § 4:35, at 199-201; *see also In re Regents of the Univ. of California*, 101 F.3d 1386, 1390 (Fed. Cir. 1996) (noting that the common interest privilege may apply to a patent holder and its

licensee). "The protection of the privilege under the community of interest rationale, however, is not limited to joint litigation preparation efforts. It is applicable whenever parties with common interests joint forces for the purpose of obtaining more effective legal assistance." Rice, Attorney-Client Privilege in the United States § 4:36, at 216. As noted below, however, that legal assistance must pertain to the matter in which the parties have a joint legal interest, and the communication must be designed to further that specific legal interest.

In the motion at bar, Defendants assert that communications between JVC and potential bidders are protected by the common interest privilege and cannot be disclosed. Defendants contend, for instance, that the litigation abstract originally prepared prior to the litigation by JVC counsel for JVC management, and hence protected by both attorney-client and work product privileges, remains protected even though it was shared with potential bidders for JVC shares. In support of this argument, Defendants rely on *Hewlett-Packard v. Bausch & Lomb, Inc.*, 115 F.R.D. 308 (N.D. Cal. 1987), in which Judge Brazil of this district held that the defendant and a prospective buyer of one of the defendant's divisions had sufficiently overlapping legal interests that justified the defendant's sharing of a patent opinion letter with the prospective buyer.

The Court does not find Defendants' argument persuasive. First, though Judge Brazil's opinion in *Hewlett-Packard* is thoughtful, well reasoned, and has been adopted by other courts, *see, e.g., Britesmile, Inc. v. Discus Dental, Inc.*, C 02-3220 JSW (JL), 2004 U.S. Dist. LEXIS 20023, at *9 (N.D. Cal. Aug. 10, 2004); *Rayman v. American Charter Federal Savings & Loan Ass'n.*, 148 F.R.D. 647, 654-55 (D. Neb. 1993), a number of courts have disagreed with its approach to the extent it suggests that the common interest privilege extends generally to disclosures made in connection with the prospective purchase of a business. *See, e.g.*, *Libbey Glass, Inc. v. Oneida, Ltd.*, 197 F.R.D. 342, 349 (N.D. Ohio 1999) (concluding that defendant "sought commercial gain, not legal advantage, through disclosure of its lawyer's advice to [third parties]"); *Bank Brussels Lambert v. Credit Lyonnais*, 160 F.R.D. 437, 447 (S.D.N.Y. 1995) (stating that "the common interest doctrine does not encompass a joint business strategy which happens to include as one of its elements a concern about litigation"); *Oak Industries v. Zenith Industries*, No. 86 C 4302, 1988 U.S. Dist. LEXIS 7985, at *12 (N.D. Ill. July 27, 1988) ("declin[ing] to expand the coverage of the attorney-

client privilege to information which a party freely shares with other business persons"). *See also SCM Corp. v. Xerox Corp.*, 70 F.R.D. 508, 512-13 (D. Conn. 1976) (noting that third party's interest "does not appear to be that of a potential co-defendant in a possible antitrust action"; instead, "it was negotiating the price for relinquishing voting and managerial control [in the joint venture with defendant] to [defendant]," an issue on which the third party and defendant were not commonly interested but rather "adverse, negotiating at arm's length a business transaction between themselves").

Properly read, *Hewlett-Packard* did not take issue with the basic requirement of the common interest exception that the parties must have "a common legal, as opposed to commercial, interest." *Bank Brussels Lambert*, 160 F.R.D. at 447. *Hewlett-Packard* did not hold there was a common legal interest between defendant and the third party merely because the third party was a prospective purchaser of one of defendant's divisions. Rather, the court found there was a common legal interest because of anticipated joint litigation. The court concluded that given the impending acquisition, it was "quite likely" that both parties would be sued by the plaintiff and that the defendant would defend the marketing of the product in the years preceding the sale to the third party while the third party would defend the same product for the years following the sale. *See Hewlett-Packard*, 115 F.R.D. at 310. In the instant case, there appears little to indicate that Defendants and the TPG fund might ever engage in joint litigation. The TPG fund was simply considering buying a majority share of JVC. It will not likely become a joint defendant with JVC.

Moreover, as noted above, even if there were a common legal interest, the common interest exception requires that the communication at issue be "designed to further *that* [legal] effort." *Bergonzi*, 216 F.R.D. at 495 (emphasis added). In context of the instant case, the disclosures which concern the instant litigation, to be protected, must be made in the course of "formulating a *common legal strategy*," *Libbey Glass, Inc.*, 197 F.R.D. at 348, or otherwise furthering the parties' joint interest in this litigation. *See also In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 805 F.2d 120, 126 (3d Cir. 1986) (stating that joint defense privilege requires that "the statements were designed to further the [joint defense] effort"); *Lectrolarm Custom Systems, Inc. v. Pelco Sales, Inc.*, 212 F.R.D. 567, 572 (E.D. Cal. 2002) (noting that "doctrine only protects communication when they

1  are part of an ongoing and joint effort to set up a common defense strategy"); *accord United States*
2  *ex rel., Burroughs v. DeNardi Corp.*, 167 F.R.D. 680, 685 (S.D. Cal. 1996).  While the JVC
3  litigation abstract might have been helpful to facilitate the potential commercial transaction, it did
4  not further a common legal strategy in connection with the instant litigation.  It was not, for instance,
5  a communication coordinating the defense in this case.  Rather, Defendants provided the litigation
6  abstract in order to facilitate the TPG fund's and other potential bidders' commercial decision
7  whether to buy the majority share in JVC.  Thus, it was designed to further not a joint defense in this
8  litigation, but to further a commercial transaction in which the parties, if anything, have opposing
9  interests.  The litigation abstract thus would not qualify for the common interest exception.

10  To the extent *Hewlett-Packard* implies that policy consideration such as removing barriers to
11  business deals expands to common interest doctrine and obviates the requirement that the protected
12  communication must be intended to further the specific legal effort in which they hold a joint
13  interest, the Court disagrees.  Such an exception would remove the common interest doctrine far
14  from its historical antecedent, the joint defense doctrine.

15  Finally, the Court notes that, although the common interest exception to waiver requires that
16  a disclosure be made in furtherance of a common legal interest in order to preserve the attorney-
17  client privilege, the disclosure to a third party does not necessarily constitute a waiver of the work
18  product privilege.  For work product, "protection is waived where disclosure of the otherwise
19  privileged documents is made to a third party, and that disclosure enables an adversary to gain
20  access to the information." *Bergonzi*, 216 F.R.D. at 497.  The work product privilege provides
21  protection against adversaries and is not as easily waived as the attorney-client privilege. *See In re*
22  *Syncor ERISA Litigation*, 229 F.R.D. 636, 645 (C.D. Cal. 2005).  Of course, this more restrictive
23  rule on waiver applies only to communications which constitute attorney work product in the first
24  instance.
25  ///
26  ///
27  ///
28  ///

## II. CONCLUSION

For the foregoing reasons, both TPGI and Defendants' motions to quash are denied. The parties are ordered to meet and confer as to discovery from JVC in light of the guidance provided herein.

This order disposes of Docket Nos. 672, 677, and 681.

IT IS SO ORDERED.

Dated: July 3, 2007

_____
EDWARD M. CHEN
United States Magistrate Judge

8