# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NIDEC CORPORATION | No. C 05-0686 SBA |
| Plaintiff, | |
| v. | **ORDER** |
| VICTOR COMPANY OF JAPAN, LTD., JVC COMPONENTS (THAILAND) CO., LTD., AGILIS INC., and AGILIS TECHNOLOGY INC., | [Docket No. 806] |
| Defendants, | |
| NIDEC AMERICA CORPORATION and NIDEC SINGAPORE PTE, LTD., | |
| Additional Defendants on the Counterclaims. | |

Currently before the Court is defendants Victor Company of Japan, Ltd., JVC Components (Thailand) Co., Ltd., Agilis Inc. and Agilis Technology Inc.'s (collectively "JVC") Motion Pursuant to Local Rule 7-9 for Leave to File a Motion for Reconsideration "Pursuant to Rule 59(e)" [Docket No. 806]. For the reasons that follow, the Motion for Leave to File a Motion for Reconsideration is DENIED.

**BACKGROUND**

On September 28, 2007, this Court issued an order (the "Order") granting in part and denying in part defendant JVC's motion for summary judgment of non-infringement of various patents owned by plaintiff Nidec Corporation. *See* Docket No. 786. As is relevant here, the Court denied JVC's motion with respect to non-infringement of U.S. Patent No. 6,554,476 (the "'476 Patent").

The '476 Patent concerns using a "press-fit" process to join the shaft of a spindle motor to a

thrust plate. *See* '476.5:25-29. Each of the asserted claims of the '476 Patent requires that a "shaft member" be "press-fit" into a "thrust plate." *Id.* At the October 11, 2006 *Markman* hearing, this Court construed the term "press-fitting" to mean "a force-fit that has negative allowance." *See* Docket No. 281. One method of "press-fitting" a shaft to a thrust plate is where the shaft is pressed into a thrust plate whose bore hole is smaller than the diameter of the shaft, thus creating a "force fit." A "negative allowance" is created with this type of force-fit because the bore hole is smaller than the shaft which is fit into -- thus the "allowance" between the shaft and thrust plate is "negative."

In its summary judgment motion, JVC argued that its accused motors do not infringe the '476 Patent because they are manufactured using a "caulking" process which, JVC argues, does not involve a "negative allowance." In the caulking process, the end of the shaft is loosely inserted into the bore hole of the thrust plate. At the beginning of the process, the diameter of the bore hole of the thrust plate is slightly larger than the diameter of the end of the shaft. Pressure is then applied to the thrust plate, which squeezes it and consequently makes the bore hole smaller, thereby forcing the thrust plate onto the shaft. JVC argued that because the caulking process does not involve a shaft being fit into a thrust plate whose bore hole is *smaller* than the diameter of the shaft before joining, it does not involve a "force fit that has negative allowance" as required by Claims 1-5 and 7 of the '476 Patent.

In denying the motion for summary judgment, the Court noted that, during the claim construction hearing, the Court recognized that there may be a negative allowance both before *and after* the shaft and thrust plate are joined. Order at 21. The Court further noted that "[t]here is no dispute between the parties that there is a negative allowance *after* the shaft and thrust plate are joined by the caulking process." *Id.* The Court concluded, "[a]s the Court declined [in the claim construction hearing] to adopt a definition that requires a negative allowance before the shaft is inserted into the plate, JVC has failed to demonstrate that, as a matter of law, the accused spindle motors employing the caulking method do not literally infringe the '476 Patent." Order at 22.

Dissatisfied with the Court's resolution of this matter, JVC now requests "reconsideration and correction" of the Order on two grounds. First, JVC argues that the Court "committed a clear legal error in modifying its claims construction in the context of JVC's summary judgment motion to include methods of joining that have a 'negative allowance' *after joining*." Mot., Ex. A at 9 (emphasis in

2

original). Second, JVC requests that, even if the Court declines to reconsider its Order, the Court should correct a "clear factual error" in the Order, namely the Court's statement that "[t]here is no dispute between the parties that there is a negative allowance after the shaft and thrust plate are joined by the caulking process." Order at 21:19-21. JVC argues that this statement is "inaccurate" because JVC "absolutely disputes that there is a 'negative allowance' in JVC's motors after the shaft and thrust plate are joined by the caulking process." Mot. at 2.

## **LEGAL STANDARD**

Motions for reconsideration of interlocutory orders are governed in this District by Civil Local Rule 7-9, which provides as follows:

> Before the entry of judgment adjudicating all of the claims and the rights and liabilities of all the parties in a case, any party may make a motion before a Judge requesting that the Judge grant the party leave to file a motion for reconsideration of any interlocutory order made by that Judge on any ground set forth in Civil L. R. 7-9(b). No party may notice a motion for reconsideration without first obtaining leave of Court to file the motion.

Civil L. R. 7-9(a). Under Civil Local Rule 7-9(b), before leave to file a motion for reconsideration is granted, the moving party must specifically show:

> (1) that at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or
>
> (2) The emergence of new material facts or a change of law occurring after the time of such order; or
>
> (3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

Civil L.R. 7-9(b). As is clear from the plain language of the rule, Local Rule 7-9 applies to interlocutory orders, and does not apply to final judgments. *Pacific Coast Fed'n of Fisherman's Ass'ns v. U.S. Bureau of Reclamation*, 2006 WL 1469390 (N.D. Cal. 2006) (Armstrong, J.). Motions for reconsideration of judgments are properly brought pursuant to Federal Rule of Civil Procedure 59(e). *Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 466-67 (9th Cir.1989).

## **ANALYSIS**

JVC's motion is flawed on so many levels that it is difficult to know where to begin; nevertheless, as is logical, the Court will proceed first with the procedural and then with the substantive.

### 1.     **The Procedural**

As an initial matter, JVC erroneously styles its motion for reconsideration as "pursuant to Rule 59(e)," which only applies to judgments and not interlocutory orders. *Balla*, 869 F.2d at 466-67. In fact, the correct vehicle for a motion for reconsideration of the Order is Local Rule 7-9. This error can hardly be unintentional: the basis for JVC's motion is that the Court "committed clear error" by "modifying" its claim construction of the term "press fitted" contrary to the common understanding of that term. However, the "clear error" standard applies to motions filed pursuant to Rule 59(e), not motions brought pursuant to Local Rule 7-9. Rule 59(e) and Local Rule 7-9 are different rules, with different standards. *See, e.g., Wireless Access, Inc. v. Research in Motion, Ltd.*, No. C-01-20600-JF, 2001 WL 1218744, *2 (N.D. Cal. Sept. 12, 2001) (Fogel, J.) (distinguishing L.R. 7-9's "manifest failure to consider material facts" standard from Fed. R. Civ. P. 59(e)'s "clear error or manifestly unjust decision" standard). JVC provides nothing to suggest that the "clear error" standard applies to motions pursuant to L.R. 7-9.

Rule 59(e) provides: "A motion to alter or amend the *judgment* shall be served not later than 10 days after entry of the judgment." Fed. R. Civ. P. 59(e) (emphasis added). The word "judgment" as used in the Federal Rules of Civil Procedure is defined in Rule 54(a). *See Financial Servs. Corp. v. Weindruch*, 764 F.2d 197, 198 (7th Cir.1985) (per curiam). A judgment "includes a decree and any order from which an appeal lies." Fed. R. Civ. P. 54(a). Thus, the word "judgment" as used in Rule 59(e) encompasses final judgments and appealable interlocutory orders. *See Weindruch,* 764 F.2d at 198; *Morgan Guaranty Trust Co. v. Third Nat'l Bank of Hampden County*, 545 F.2d 758, 760 (1st Cir.1976)

However, JVC is requesting that the Court reconsider an order *denying* -- not *granting* -- summary judgment. An order denying summary judgment ordinarily is interlocutory and not appealable. *John v. City of El Monte*, --- F.3d ----, 2007 WL 2781904, *3 (9th Cir. 2007). Because this Court's Order did not "end the litigation on the merits and leave nothing for the court to do but execute the judgment," the challenged Order is not a final judgment or appealable interlocutory order, and therefore JVC cannot avail itself of Rule 59(e), which only applies to reconsideration of "final judgments and appealable

4

interlocutory orders." *Balla*, 869 F.2d at 466-67; *Motorola, Inc. v. J.B. Rodgers Mech. Contractors*, 215 F.R.D. 581, 583 (D. Ariz. 2003).

Local Rule 7-9, on the other hands, explicitly applies to interlocutory orders, such as the Order at issue here. Nowhere does Local Rule 7-9 state that a motion for reconsideration may be filed when the court commits "clear error;" the only plausibly analogous provision in the Rule is that a motion for reconsideration may be filed where there has been a "manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order." L.R. 7-9. However, a "manifest failure" to "consider material facts or dispositive legal arguments" is not the same as committing "clear error": a court can consider the "material facts or dispositive legal arguments" advanced by the parties but still commit "clear error" in reaching its conclusions after considering those facts and arguments. Thus, Local Rule 7-9 sets a higher threshold for motions for reconsideration of interlocutory orders than does Rule 59(e) with respect to reconsideration of judgments.

This is for good reason: as the Ninth Circuit stated in *Balla*, the requirement of a final judgment as a prerequisite to moving for reconsideration under Rule 59(e) "protects against the specter of piecemeal review." *Balla*, 869 F.2d at 467. Providing for a higher standard for motions for reconsideration of interlocutory orders, as does Local Rule 7-9, lessens the likelihood that parties will, as JVC has done here, opportunistically move the Court to reconsider any order that it disagrees with, needlessly impeding the progress of the case and unduly burdening opposing parties and the Court.

Tellingly, JVC does not even attempt to argue that any of the requirements of Local Rule 7-9(b) are satisfied. JVC does not argue that the Court *failed to consider* material facts or dispositive legal arguments; rather, JVC argues that, after considering them, the Court came to a "clearly erroneous" conclusion. Such a basis for a motion for reconsideration, while proper pursuant to Rule 59(e), is not sanctioned by L.R. 7-9. Given the plain language of L.R. 7-9, and given that *Balla* is precisely on point, it appears that JVC has intentionally misstyled its motion -- and misrepresented caselaw[1] -- in an attempt

---

[1]JVC cites *School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.*, 5 F.3d 1255, 1262 (9th Cir. 1993) for the proposition that "[a] district court may reconsider an order granting *or denying* summary judgment under Rule 59(e)." Mot. at 3 (emphasis added). However, *ACandS*

5

1 to avoid this obvious procedural impediment.

2 In sum, JVC's motion for leave to file a motion for reconsideration is procedurally defective and
3 can be denied on those grounds alone.

**2.     The Substantive**

However, even were the Court to consider JVC's motion for reconsideration on the merits, the motion has even less substantive merit than it does procedural. The gravamen of JVC's motion is that the Court "committed a clear legal error in modifying its claims construction in the context of JVC's summary judgment motion to include methods of joining that have a 'negative allowance' *after joining*." Mot., Ex. A at 9. This argument is both factually incorrect and legally meritless.

As an initial matter, JVC's statement that the Court "acknowledg[ed]" that the "ordinary meaning of the term 'press fit' is the use of force to join two parts that *before joining* have a negative allowance," Mot., Ex. A at 2, but nonetheless adopted a claim construction contrary to that meaning by "modifying" its previous construction by "includ[ing] methods of joining that have a 'negative allowance' *after joining*" is, simply put, false. Nothing the Court stated in its Order can be reasonably interpreted as in any way "modifying" its construction of the term "press-fitted," which was settled in the 2006 *Markman* hearing; nor can anything the Court stated reasonably be interpreted as "acknowledging" that the "ordinary meaning of the term 'press fit' is the use of force to join two parts that *before joining* have a negative allowance." What the Court actually stated was:

> JVC strenuously argues that "press-fitting" is commonly understood to mean forcing a larger shaft into a smaller bore hole, and that it is commonly acknowledged that this is a different process from caulking. *See* Opp'n at 9. While this may indeed be the case (*see, e.g*, Shen Decl, ¶ 14), it has no bearing on this Court's construction of the term, which does not require that the negative allowance exist before the plate and shaft are joined. Indeed, the Court rejected JVC's construction, "[t]he larger diameter shaft must be force-fitted into the smaller diameter bore hole of the thrust plate," which is essentially identica[l] to the definition of press-fitting on which it relies in its present motion.

Order at 21. As can be seen, the Court "acknowledged" *nothing* about whether the common

stands for no such proposition; it states only that a "district court may reconsider its *grant* of summary judgment under . . . Federal Rule of Civil Procedure 59(e)." *Id* (emphasis added). This is, of course, entirely consistent with *Balla*'s holding that a final judgment is a prerequisite to a Rule 59(e) motion.

**United States District Court**
For the Northern District of California

meaning of "press fit" has *anything* to do with the meaning of the term "negative allowance"; the Court only stated that while it "may indeed be the case" (not that it *is* the case) that "'press-fitting' is commonly understood to mean forcing a larger shaft into a smaller bore hole," this has nothing to do with the Court's construction of the term, which was resolved at the *Markman* hearing. The point the Court was making was that even if the term "press-fitting" is commonly understood to mean forcing a larger shaft into a smaller bore hole (which was the claim construction JVC offered, and the Court rejected, at the *Markman* hearing), that fact has nothing to do with the meaning of the term "negative allowance," and specifically has nothing to do with whether or not a negative allowance can exist *after* the thrust plate and shaft are joined. This is, in fact, the exact opposite of what JVC states the Court held when it states that the Court "acknowledg[ed]" that the "ordinary meaning of the term 'press fit' is the use of force to join two parts that *before joining* have a negative allowance." Moreover, JVC's motion is a creature of its apparent inability to distinguish between the conditional phrase "may be" and the indicative term "is." As noted above, the Court only stated that it "may indeed be the case" that "press-fitting" is commonly understood to mean forcing a larger shaft into a smaller bore hole; it did not acknowledge that this *is* the common understanding of the term. This vitiates the factual basis for JVC's "clear error" argument.

The motion for reconsideration is also legally meritless. JVC's motion is premised on the legal argument that "Federal Circuit precedent *requires* the Court to interpret the claim language of the '476 Patent consistent with the common understanding of those terms," for which JVC cites *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005). Mot., Ex. A at 2 (emphasis in the original). This is simply a false statement of the law. What the Federal Circuit actually stated in *Phillips* was, "[we] have frequently stated that the words of a claim 'are *generally* given their ordinary and customary meaning.'" *Id.* (emphasis added). Thus, contrary to JVC's representation, there is no directive from the Federal Circuit that claim terms *must* be given their ordinary and customary meanings; the rule is that claims terms are *generally* given such meanings. There is nothing in *Phillips* – or any other case cited by JVC – that suggests that a court is ever "*required*" to give the words of a claim their ordinary and customary meaning. This further vitiates JVC's (factually incorrect) argument that, because the Court acknowledged that it was "modifying" its construction of the term "press-fitted" contrary to the common

7

1 understanding of that term, it committed "clear error" because Federal Circuit precedent *requires* courts
2 to interpret terms consistent with their common understanding.

3 Finally, as is most important for the resolution of the instant motion, a perusal of the evidence
4 submitted in support of JVC's motion shows that JVC has provided *nothing*, beyond the self-serving
5 statements of its hired expert made well after the briefing on the motion had closed, that demonstrates
6 that the term "negative allowance" cannot be applied to describe a force-fit after joining. While the
7 technical materials JVC provides define "force-fits" and "interference fits" as involving a negative
8 allowance, *not one* of the technical treatises offered suggests in any way that there cannot be a negative
9 allowance after joining, nor do they even define the term "negative allowance." *See* Kao Decl., Exs B-D.

10 Accordingly, JVC's motion for reconsideration is thrice meritless: in its interpretation of the
11 Court's Order, its interpretation of the law, and its interpretation of the technical evidence.

**3.    The Court's "Misstatement" of JVC's Position on Negative Allowance**

13 JVC further requests that, even if the Court declines to reconsider its ruling in the Order, the
14 Court should correct a "clear factual error" in the Order, namely the Court's statement that "[t]here is
15 no dispute between the parties that there is a negative allowance after the shaft and thrust plate are
16 joined by the caulking process." Order at 21:19-21. JVC argues that this statement is "inaccurate"
17 because JVC "absolutely disputes that there is a 'negative allowance' in JVC's motors after the shaft
18 and thrust plate are joined by the caulking process." Mot. at 2.

19 The problem with granting JVC's request, however, is that there is no "factual error" for the
20 Court to correct; JVC itself *concedes* in its motion for reconsideration that it *did not* dispute that there
21 is a negative allowance after joining in its briefing on the summary judgment motion. JVC
22 simultaneously argues that while it vigorously disputes that a negative allowance can exist after the
23 thrust plate and shaft are joined, it did not dispute this in its summary judgment briefing because, despite
24 the fact that the issue was extensively briefed by Nidec in its opposition, the issue was "simply not
25 relevant to JVC's motion" and "not properly before the Court." *See* Mot., Ex. A at 10, n. 5. But Nidec
26 did in fact offer its interpretation of negative allowance as dispositive of JVC's motion in its opposition,
27 and JVC simply declined to address this argument in its reply, and specifically declined to challenge
28 Nidec's statement that JVC *did not dispute* that there could be a negative allowance after joining. *See,*

8

1 *e.g.*, Docket No. 790 at 4 ("JVC has never disputed that their products have this negative allowance after assembly. In fact, JVC admits that this negative allowance is present in their caulked products."). Given that JVC's instant motion is based in part on JVC's apparently elephantine memory of the proceedings in this case,[2] this failure to properly recite basic facts in the record is disconcerting.

In any case, because JVC concedes it did not dispute in its briefing that there can be a negative allowance after the thrust plate and shaft have been joined, there is no "factual error" for the Court to correct.

**4.    New Evidence**

JVC's proffer of "new" evidence, consisting of cross-sectional pictures of the accused motors taken by Nidec and allegedly produced after the briefing on summary judgment had closed, fails to form any basis for the Court to reconsider its Order. The pictures allegedly show that there is no negative allowance (in the sense offered by Nidec of "overlap") in the accused motors after joining. *See* Mot., Ex. A at 11-12. However, JVC can hardly argue in good faith that photographs taken by Nidec of *JVC's own motors* – which JVC easily could have taken itself – constitute "new material facts" of the sort contemplated by Local Rule 7-9.

Moreover, the fact that a "negative allowance" or overlap may not be visible to the naked eye in Figure 4 has no bearing on whether one exists. Indeed, in support of its argument that a negative allowance exists in the accused motors, Nidec offered the testimony of JVC's own expert witness who stated that, during the caulking process, "the inner diameter [of the thrust plate] mentioned earlier as 3.995 [millimeters] becomes smaller than the shaft outer diameter of 3.954." Docket No. 790 at 4. Given that the dimensions involved here are measured in terms of microns, it is hardly surprising that any such overlap, if it exists, is not visible to the naked eye, particularly in the small, poorly reproduced photographs offered by JVC.

Finally, this factual argument could -- and should -- have been made in the briefing on the motion for summary judgment. That JVC apparently did not consider this point important enough to address it in its briefing does not provide grounds for the Court to now revisit its Order.

---

[2]*See, e.g.*, JVC's detailed discussion of the proceedings in the *Markman* hearing, Mot., Ex. A at 5 fn.2.

9

**CONCLUSION**

JVC's motion is both procedurally flawed and substantively meritless. JVC should tread warily in considering filing any more ill-considered motions consisting of the sort of make-weight posturing contained in the instant motion, particularly where the substance of the motion is really just that the Court's considered analysis is so faulty as to border on the scientifically absurd.

Accordingly, in case it is not already abundantly clear, IT IS HEREBY ORDERED that JVC's Motion for Leave to File a Motion for Reconsideration Pursuant to Rule 59(e) [Docket No. 806] is DENIED.

IT IS SO ORDERED.

Dated: 11/16/07

SAUNDRA BROWN ARMSTRONG
United States District Judge